UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                  CRIMINAL ACTION

VERSUS

DAMOND REYNARD LOCKETT           NO. 20-00091-BAJ-RLB

## RULING AND ORDER

Before the Court is Defendant's **Motion to Suppress (Doc. 19).** The Government opposes the Motion. (Doc. 27). The Court conducted a hearing on the matter. (Doc. 28). For the reasons stated herein, the Motion is **DENIED.**

## I.    BACKGROUND

On November 19, 2020, the Federal Grand Jury returned a three-count Indictment against Defendant Damond Reynard Lockett. *See* (Doc. 1). Count One charges Defendant with knowingly and intentionally possessing with intent to distribute 100 grams or more of a mixture and substance containing a detectable quantity of heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). (*Id.* at 1). Count Two charges Defendant with knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*Id.*). Count Three charges Defendant with knowingly possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). (*Id.* at 2).

On April 20, 2020, Agent Chad Felps, an officer of the East Baton Rouge Sherriff's Office Narcotics Division, applied for a search warrant (the "Ping Warrant")

1

to track Defendant's cell phone geographical location information.[1] (Doc. 19-2, p. 2).

Specifically, Felps requested the "prospective location information of the cell phone

continuously, in real time including nights, Sundays and holidays during the time

period authorized by the warrant within the contiguous United States of America

when in use, for a period of thirty days." (*Id.*). In support, the affiant alleged that

(1) Defendant was the subject of an ongoing, large-scale narcotics investigation; (2) a

confidential informant ("CI") provided "detailed" information about Defendant;

(3) the CI purchased "large quantities of crack and cocaine" directly from Defendant,

and; (4) the CI provided a phone number that Defendant allegedly utilized to conduct

illegal drug transactions. (Doc. 19-2, p. 3). The affiant does not provide a date on

which the CI allegedly purchased narcotics from the Defendant.

The judge issued the warrant and authorized "Felps or any other qualified law

enforcement officer . . . to electronically seize, search, tabulate and make return

thereof according to law the geographical location information of [Defendant's]

cellular phone number." (Doc. 19-2, p. 4). Three days later, on April 23, 2020, Felps

applied for a second warrant (the "GPS Warrant"), this time to install a tracking

device on Defendant's vehicle. (Doc. 19-2, p. 7–11). The affidavit supporting the

---

[1] According to the Electronic Frontier Foundation:

> A cell phone's location, whether stationary or moving, can be tracked through
> cell site location information (CSLI) or global positioning system (GPS) data.
> CSLI, which is also referred to as cell phone location tracking, refers to
> information cell phones convey to nearby cell towers. . . . In addition to the data
> a cell phone regularly relays to cell phone towers, a cell phone may be 'pinged'
> to force it to reveal its location to the carrier.

ELECTRONIC FRONTIER FOUNDATION, *Cell Site Location Information*, (last revised
Mar. 28, 2019), https://www.eff.org/document/cell-phone-location-information-one-pager.

warrant application indicated that on April 22, 2020, officers were able to track Defendant's cellphone to "the area of Starring Ln. and Bayou Fountain Blvd." (Doc. 19-2, p. 8). After searching the area, officers found a car matching the description of Defendant's vehicle given by the CI, and determined that it was, in fact, Defendant's car. (*Id.*). Based on the affidavit, which was replete with information obtained from the physical, electronic, and digital surveillance of Defendant, the judge approved the application for the GPS Warrant. (Doc. 19-2, p. 11).

A week later, Felps was approved for two "no-knock"[2] search warrants to search two residences that officers allegedly saw Defendant enter because of their surveillance. (Doc. 19-2, p. 14–26). At the first residence, officers found "a firearm, marijuana, and four and a half amphetamine pills." (Doc. 19-1, p. 5). At the second residence, officers found "two firearms, narcotics, digital scales, and packing material." (*Id.*).

In the instant Motion, Defendant seeks to suppress the evidence seized as a result of the allegedly deficient series of warrants procured by officers. (Doc. 19-1, p. 1). Defendant argues that the affidavit supporting the initial Ping Warrant did not provide the issuing judge with sufficient information to establish probable cause. (Doc. 19-1, p. 10). Therefore, because the Ping Warrant was deficient, Defendant contends that all subsequent warrants based on information derived from the Ping Warrant should be suppressed as "fruit of the poisonous tree." (*Id.*). The Government

---

[2] A "no knock" warrant is a warrant in which law enforcement officers request advance permission to dispense with the Fourth Amendment's knock-and-announce requirement when executing a search warrant.

counters that the affidavits supporting all warrants obtained during the investigation of Defendant adequately articulated the requisite probable cause to justify the issuance of the warrants. (Doc. 27, p. 1). In the alternative, the Government asserts that the affidavit supporting the Ping Warrant was "not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and therefore the good-faith exception applies. (Doc. 27, p. 1–2).

## II.   LEGAL STANDARD

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The task of the issuing judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before her, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The duty of a reviewing court is simply to ensure that the judge had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Id.* at 238–239.

"A court generally will not second guess the [issuing judge's] determination regarding the existence of probable cause in granting a search warrant." *United States v. Trejo*, 492 F. Supp. 2d 659, 674 (W.D. Tex. 2007), *aff'd*, 378 F. App'x 441 (5th Cir. 2010). "Instead, [an issuing] judge's determination on probable cause is given great deference by the reviewing court." *Id.* (internal quotations and citations omitted).

4

## III.   ANALYSIS

### A. The Fourth Amendment's Probable Cause Standard and Good Faith Exception

To determine if an affidavit provides probable cause, it must merely raise "a 'fair probability' or a 'substantial chance' that criminal evidence will be found in the place to be searched." *United States v. Morton*, 984 F.3d 421, 425 (5th Cir. 2021) *(Morton I)* (citing *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009)).[3] Here, officers sought a warrant to search Defendant's geolocation. The United States Court of Appeals for the Fifth Circuit noted in *United States v. Beaudion* that the general "reasonableness" requirement of the Fourth Amendment, which "requires 'a warrant supported by probable cause' or else a 'specific exception to the warrant requirement . . . applies to CSLI and GPS data collected." 979, F.3d 1092, 1100 (5th Cir. 2020) (citing *Carpenter v. United States*, 138 S. Ct. 2206, 2211–12, 2221 (2018)). So long as a warrant is supported by probable cause, a search of CSLI or GPS coordinates from a phone is likely to be reasonable. *See United State v. Beverly*, 943 F.3d 225, 234–35 (5th Cir. 2019) (denying motion to suppress evidence of CSLI obtained pursuant to a "warrant . . . supported by probable cause").

The Supreme Court has further instructed that "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Leon*, 468 U.S. 897,

---

[3] *But see United States v. Morton*, No. 19-10842, 2021 WL 1990794, *1 (5th Cir. 5/18/2021) *(Morton II)* (granting rehearing en banc and vacating *Morton I* opinion pursuant to court rules).

922 (1984). Where a search is executed pursuant to a warrant, the Defendant must prove by a preponderance of the evidence that the officer's reliance on the warrant was not objectively reasonable, otherwise this "good-faith exception" applies. *United States v. Rosa*, 721 F. App'x 403 (5th Cir. 2018).

However, the Supreme Court has identified four circumstances in which the good-faith exception to the exclusionary rule does not apply:

> (1) the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew or should have known was false; (2) the issuing magistrate abandoned the judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid.

*United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006) (citation omitted); *See also Leon*, 468 U.S. at 923. Here, Defendant alleges that the affidavit on which the judge relied was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. He argues that where an officer relies on these "bare bones" affidavits, the good-faith exception does not apply. *See United States v. Davis*, 226 F.3d 346, 352 (5th Cir. 2000) ("A warrant based on a 'bare bones' affidavit that is obviously insufficient to establish probable cause does not justify an officer's reliance.").

"Bare bones" affidavits typically "contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) (quoting *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)). When evaluating whether an affidavit is "bare bones," courts "will usually be required to

6

look at the affidavit supporting the warrant but, even so, all of the circumstances surrounding the warrant's issuance may be considered." *Morton*, 984 F.3d at 425 (citing *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003); *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994)).

## B. Whether the Affidavit Provided Probable Cause

Defendant argues that the Ping Warrant affidavit was "based exclusively on the information Agent Felps received from a newly developed confidential informant." (Doc. 19-1, p. 10). Defendant therefore contends that, because the Ping Warrant "contained scant information from a confidential informant who did not have any documented history of reliable tips," the warrant not only is not supported by probable cause, but is bare bones, and therefore all information obtained pursuant to it should be excluded. (*Id.*).

However, the affidavit here provides sufficient information—albeit marginally—to support a finding of probable cause. "An affidavit may rely on hearsay—information not within the personal knowledge of the affiant, such as an informant's report—as long as the affidavit presents a 'substantial basis for crediting the hearsay.' In assessing the credibility of an informant's report, we examine the informant's veracity and basis of knowledge." *Satterwhite*, 980 F.2d at 321 (5th Cir. 1992) (citing *Gates*, 462 U.S. at 242, internal citations omitted).

It is true that the affidavit does not include an explicit statement of reliability. Indeed, Felps testified that this was the first time he had relied on information supplied by this CI. However, the affidavit contains sufficient information to credit the statements made by the CI. For example, the fact that the CI was developed in

7

March 2020—approximately one month before the Ping Warrant was issued—indicates that the CI recently purchased narcotics from the Defendant, which tends to support credibility. *See, e.g., United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130–31 (5th Cir. 1997); *United States v. Grogan*, No. 1:05-CR-136(4), 2006 WL 1305160, at *3 (E.D. Tex. May 9, 2006) (unreported). Further, the affidavit states that the CI personally participated in a purchase of narcotics from Defendant, an illegal activity, which weighs in favor of credibility. *See Satterwhite*, 980 F.2d at 322; *United States v. McKeever*, 5 F.3d 863, 864 (5th Cir. 1993). Felps also noted that Defendant was "a known violator" who was the "subject of an ongoing, large scale narcotics investigation." (Doc. 19-2, p. 2). This information provides support to establish the reliability of the informant. Taken together, the affidavit provided sufficient probable cause. *See Pena-Rodriguez*, 110 F.3d at 1130–31.

It is certainly true that the affidavit could have provided more detail. The affidavit failed to identify when or where the purchase of narcotics occurred. The affidavit provided no details about the investigation of Defendant, merely that an investigation was ongoing. The affidavit did not affirm that the CI was reliable, or that the CI used Defendant's alleged phone number while purchasing the narcotics from Defendant. (Doc. 19-2, p. 3). However, because the affidavit provided some connection between Defendant's drug distribution activities, his phone number, and his location—albeit solely on the word of a new CI—the Court must find that the affidavit was not so conclusory as to be considered "bare bones." *See Satterwhite*, 980 F.3d at 321. Therefore, the Court finds that the warrant was supported by probable

cause. As such, the Court need not reach the issue of whether the good-faith exception

applies.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion (Doc. 19) is **DENIED**.

Baton Rouge, Louisiana, this ___14th___ day of June, 2021

**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

9